Judge Owsley
delivered the Opinion of the Court.
In the year one thousand eight hundred, Lends and John Potters, for a valuable consideration to them paid. sojd and executed their obligation to Thomas Wilbourn and Robert Champ for four hundred acres of head right land, lying in the county of Cumberland. The obligation points out the interest which both Wilbourn and Champ were to have in the four hundred acres of land, and particularly describes two separate parcels, of one hundred acres adjoining, for each. The one hundred acres, designated for Thomas Wilbourn, was afterwards by his last will and testament, devised to his son William Wilbourn; and the one hundred acres designated for Champ, was afterwards for a valuable consideration received, sold by bins to William Miller, and an obligation given to Miller for a conveyance. The hundred acres purchased by Miller was after-wards, for a valuable consideration, sold by him to Ezekiel Williams, and Williams, for a valuable consideration, sold the same to Jonas Casner, and Casitcr, for a valuable consideration, sold the same to Edward Wilbourn; buc the sale by Miller and those subsequently mentioned, were all by parol, though the obligation which was given by Champ to Miller for a conveyance, without being assigned, was either delivered to the respective purchasers, at the time of contracting, or to some other person for them.
finjo of th« plicriííbf content of r>ariiok, and con- • voyanee by him accord-h’s’y.-
,\b*;igninoíií ^t’tbe obJiga'ion by Miliar to AloCor'li'JC.
After this, Edward Wilbourn claiming through Miller tito one hundred acres which Champ had obligated himself to convey, and William Wiibourn claiming the one hundred aeren devised to him by the last will of his dree xsed father Thomas Wilboun.*, the Edward and Thomas Wilbourn, verbally contracted to sell the two bund real acres of hind to William Smlf.lt, at the jjrice of .sixteen hundred dollars. At the time this contract wan made, there were executions in tin: bauds »f L. Stockton, deputy Sheriff of Cumberland enmity, for a large aei on at against the es* lie of Edward Wilbourn and William Wilbourn a; his surety, and the parties csppo'-.irg that it would be more correct to have tbr. laud &o!d by the sheriff, it v/as accordingly agreed that Stockton should noil the land undo? ice, ox* tuitions, a?id if it should sell for Sees than nixie;:» hundred dollars, the price agreed on between the parties, Smith was uelwUhuMnding to pay that amomf. In pursuance of this! agreement, Edward amrWif liam ’Wilbourn drliv.-ed the obligation whirls had been given by the Potters to Hubert Champ urns' Thomas WiibousT Ibe the bind, ami which wan ih-n bold by them, to Stockton, the deputy Sheriff, and: by a written assignment of that obligation signed by them, authorized Stockton to sell the tiro hundred acres of land, for the purpose of satisfy iug the executions which he- held against Edward and Wiijiaia Wilbourn. Sto'-kfon accordingly after having regularly advertised '¡he laud for side, exposed the same for sale at public auction, arid Smith being the. highest bidder, beca,sue the purchaser at the price of one thousand dollar:;. Regarding however, his verba! agreement with Edward and William Wilbourn, Smith paid the nix fee» hundred dollars, which he contracted with them to pay for the land, and after taking from Stockton a written certificate of hi*, purchase, received from him an deputy sheriff a deed of conveyance for (ho land.
After this Edward Wilbourn applied to 3. W. Taylor with whom the obligation of Champ to Miller, had been left for safe keeping, and informed him. that he wanted the obligation for Smith who had «tirebased the land. Taylor accordingly da *431 j'ivered (he obligation to Wilhoisrii, but instead of banding it over to Smith, Wiiboiirn carried the obJfigationto Miller, told Miller that John B. M’Cor-mac was the rightful owner of the one hundred acres of land described in the obligation of Champ, and obtained Miller’s assignment of the obligation to McCormac.
Winter's reS/wiii..
Bill for the (i-a¿¿mant i<> iWcCormncto °raú™0< y
IUodornmc-reboso» tho ^m^tVciurls Imd perjuries, :ind «vikm a com-eyuncut»himsel1,
Discovering that Miller liad been induced to assign the obligation to McCormac, and supposing the assignment had been obtained by artifice and misrepresentation, Smith by an agent applied to Miller and obtained from him an instrument of writing setting out the various sales of the, Sand, and the inducements that led him to make the assignment: of the obligation to McCormac, and after reciting tho imposition and fraud by which ho was induced to make the assignment, eonrludes by assigning the obligation and all the*right title arid interest which ho ever had in tho land (o Smith.
To obtain the legal title from the. heirs of the Pott.ers, (they having departed this life.) Smith then exhibited his bill in equity against the heirs. Champ, Miller, the Yfilbnurus and McCormac. Together with the foregoing facts the bill charges the assign-meat to McCormac, to have been procured through the fraud and misrepresentation of Edward Welbourn under a combination with McCormac, to cheat and defraud Smith out of the land which he had ‘honestly purchased, and fur which he. has paid a full and adequate price, and prays for a cancohnen-t of the assignment by Miller to McCormac, and for a conveyance of the land and for genere 1 relief.
Such of the defendants as answered, except MeConnac and Edward Wilbourn, admit the materia! facts charged in the bill; but Edward V/iibourn and McCormac both insist that McCormac. is entitled to the equitable right in lis» land, and McCormac makes his answer a cross hill, and prays a decree for the legal title to be made to him. 'Che answers of both McCormac and Edward Wilbourn insist, am! rely upon and [dead the statute of frauds and perjuries against tho relief sought in the bill of Smith. Though be does not: deny notice of Smith's purchase before he received the assignment of the obligation *432 frotn Miller, McCormac denies Fraud, and insists that-Edward Wilbourn was owing him foes for services performed ,iy him as a lawyer, and that for those fees and other services of the same sort, which he was afterwards to perform,' formed the consideration which he was to give tor the land; but the amount of those fees nor the particular services performed, or which were to be performed by McCormac, are not. mentioned in his answer.
Decree of the circuit court.
Error assigned by McCih'-Ttf-Jl’',
An a'-i-n•ncnl by endorsement of a convoyanco bond before sold by parol, obtained by lalt-oly ropro¡.'cntinif to the assignor that she assignee is entitled to it, wlien it was known to a'signoc the awip;njnent was due another person, cannot prevail aqairista sub■ynguent assignmeut to l!i • rightful owner, on separate paper.
*432 On a final hearing the court below was of opinion that the assignment to McCormac was fraudulent* and ought to be canceled, that Smith had a good equity to the land, and pronounced a decree in his favor for the legal title and costs.
From that decree McCormac &c. have appealed.
The only part of the decree to which exceptions are taken by the assignment of errors, relates to the one hundred acres of land, sold by Champ to Miller and the obligation for which was by Miller after-wards assigned to McCormac. it is contended that by Miller’s assignment, of Champ’s obligation, McCormac became invested with the equitable right to the. land therein described, and that instead of directing the title thcrooi to be made to Smith the court below* under the cross bill of McCormac, should have decreed the title to be made to McCormac.
We cannot, however, admit that through the assignment of Chauip’s obligation, McCormac became invested with such an equity, as to authorise the aid of a court of equity in his favour. Prior to the assignment Miller liad sold the land to Williams and received from him the consideration money and was induced by no other consideration to make the assignment than a conviction produced by the representations of Edward Wilbourn, that Mc-Cormac was in good faith entitled to the benefit of Williams’ purchase, when in truth, before that time the land under a special agreement of Edward and William Wilbourn, (the former holding (ho beneficial interest of Williams’ purchase,) and by a written authority from them, had been exposed to sale by the Sheriff, Stockton, and purchased and paid for by Smith; and when too, under the pretext of getting the obligation for Smith, the person with *433 ''ti'riom if was deposited for safe keeping, was induced by Wilboum to deliver it up to him, and with a full knowledge of Smith's claim, McCormac agreed to accept (he assignment, and by conc.caihig the facts from Miller, Viilbouru procured him to make the assignment.
That the per; son so having the right to the bond and obtaining the subsequent assignment had before derived his right through several parol contracts and could not oiherwire connect, himself with as s.p.'K.:, is not f.i '..I to his claim.
If the first assignee had made the purchase,and obtained the assignment in good faith, ha might have hold, but having with fall notice obtaioen the endorsement by fren t and artifice, his claim has no equity.
it is true., that although Smith under a wvitteri power from Edward and Wüluuíi Wilboitrn to Stockton, had honestly purchased and paid his money for the land, several of the antecedent contracts; and all from Miller down to Edward Wilbourn, were by parol: and we know that under Use statute of frauds and perjuries in this country, no action or suit in equity will be sustained upon a contract for the sale of lands, unless the contract or some memorandum thereof, bo .reduced to writing, and signed by the party or some other person by liini lawfully authorized. But notwithstanding thfe provisions of the statute, it does not follow that parol contracts of that sort ought not to he fulfilled: The law will not give its aid to enforce them, but in conscience and moral justice they .should be performed by the contracting parties. After having sold the land to Williams and'réceived from him the price therefor. Miller, though not under a legal obligation to assign the bonds which he held upon (Champ to Williams, was undoubtedly in moral justice bound either io assign the obligation to him or to the person who by subsequent contracts might be entitled to the benefit of Williams’ interest in the land.
It is true, if at the, time the assignment was made to McCormac, he had been in good faith entitled to the interest of Williams, there would be. great force in his claim for relief in a court of equity. But suds appears evidently not to be the case. Before that time Edward \Vilhourn ¡¡ad become invested with the interest of Williams, but his interest, through the sale by the. Sheriff, Stockton, had also, previous to the assignment, been transfered to Smith. The agreement between McCormac and Ed ward Wilboitrn, made niter the interest of Wilbourn had uecti sold to Smith, cannot, therefore, have coufered aitv just claim upon ISlcCorvuAc. and of course the *434 assignment made by Miller to McCormac under the mistaken belief produced by the false representations of Wilbourn, that McCormac was rightfully entitled to the interest which Williams had acquired by his purchase from Miller, cannot form any ground for relief in favor of McCormac in a court of e~ quity
Cue claiming a conveyance bond by a o¡iaiü of parol contracts, who after-wards obtains a written assignment. will not be defeated by a prior assignment of the bond fraudulently obtained, statute of frauds and perjuries is not iu his road.
Cvrns Walker for appellant; Mayes for appellees.
But it is again contended that after the assignment to McCormac of Champ’s obligation by Miller the court should not have denied a conveyance of the laud to Smith. Without the written transfer to Smith which was made by Miller of the obligation of Champ, there, would certainly, in consequence of the. parol contracts through which Smith, claims to be in equity entitled to the land, be great difficulty, and perhaps an impracticability under the statute against frauds and perjuries in sustaining tiie decree in favor of Smith. But we have already seen that through the parol contracts, Smith in conscience, and moral justice, became entitled to an assignment of Champ’s obligation, and having obtained from Miller a writing purporting to be an assignment of that obligation, his right to relief cannot, we apprehend, be defeated by the operation of the statute against frauds and perjuries. It is true the writing which Smith obtained from Miller, trans - fering Champ’s obligation, is subsequent in date to-an assignment which Miller had previously made of' that obligation to McCormac. But if we are correct in the opinion that the assignment to McCormac was fraudulently obtained it would seem that either Miller or Smith claiming through him, should, in a court of equity, be relieved from the legal effect of that assignment.
It follows, therefore, that the court below was not only correct in refusing to decree a conveyance of the land to McCormac, but also in decreeing the assignment made by Miller to McCormac of Champ’s obligation to be cancelled, and for a conveyance of the legal title to be made to Smith.
The decree must, consequently, bo affirmed with cost.